## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## NEW ALBANY DIVISION

| | | |
|---|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:15-cv-00119-TWP-TAB |
| DARIN FOX, MATTHEW JOSEPH MYERS, and ESTATE OF CHAD E. ANDERSON, | ) ) ) ) | |
| Defendants. | ) | |

## ENTRY ON MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed by Plaintiff, American Family Mutual Insurance Company ("American Family"). (Filing No. 43.) American Family filed the instant Complaint for Declaratory Judgment, asserting that it owes no duty to defend or indemnify Defendants' Darin Fox ("Fox") or Matthew Joseph Myers ("Myers") for the claims asserted by the Estate of Chad Anderson ("the Estate"). Fox, Myers, and the Estate of Chad E. Anderson oppose the Motion. (Filing No. 52.) For the following reasons, the Court **grants** the Motion for Summary Judgment.

## I. BACKGROUND

As required by Federal Rule of Civil Procedure 56, the following facts are presented in the light most favorable to Defendants as the non-moving parties. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

American Family issued a Family Car Policy of insurance to Fox, policy number 0779-5936-10-09-FPPA-IN ("the Policy"), which was effective between January 3, 2013, and July 3, 2013. (Filing No. 43-3 at 2.) The Policy provided coverage for "compensatory damages an insured

person is legally liable for because of bodily injury and property damage due to the use of a car or utility trailer" and obligates American Family to "defend any suit or settle any claim for damages payable under this policy as [it] think[s] proper." (Filing No. 43-3 at 4.) Fox declared only his 2007 Ford F150 as a primary vehicle to be insured under the Policy. (Filing No. 43-3 at 2.)

On April 16, 2013, Fox purchased a 2012 E-Z Go Express l6 golf cart ("the Golf Cart") for use as a farm vehicle. (Filing No. 43-15 at 14, 26.) Fox paid $8,560.00 by check for the Golf Cart. (Filing No. 43-15 at 26.) Fox did not inform American Family of his purchase of the Golf Cart and did not otherwise register, license, or title the Golf Cart. (Filing No. 43-15 at 12, 23.)

Within days of purchasing the Golf Cart, Fox allowed Myers to borrow it for a party Myers was hosting on April 20, 2013, in connection with the Thunder Over Louisville event[1]. (Filing No. 43-15 at 16-17; Filing No. 43-16 at 6.) Specifically, Myers wished to use the Golf Cart on April 20, 2013, to transport guests to the Thunder Over Louisville party at his home. (Filing No. 43-15 at 5, 20-21; Filing No. 43-16 at 6.) Myers also intended to bring people from his house and to go down closer to the fireworks at night once the fireworks began. Myers and Fox had been friends since 1997 but were not related to one another and had never lived together. (Filing No. 43-15 at 4-6, 23.)

On April 19, 2013, Fox delivered the Golf Cart to Myers' home for the Thunder Over Louisville party. (Filing No. 43-15 at 5; Filing No. 43-16 at 6.) Later that day, Chad E. Anderson ("Anderson") came to Myers' home and the two consumed multiple alcoholic beverages. (Filing No. 43-16 at 7-8.) After having multiple drinks, Myers and Anderson decided to go to the Levy Bar with Nick Thornsbery ("Thornsbery"). (Filing No. 43-16 at 9.) Myers drove the Golf Cart

---

[1] Thunder Over Louisville, the annual kickoff event of the Kentucky Derby Festival, is an airshow and fireworks display in Louisville, Kentucky. *See* thunderoverlouisville.org.

from his home to the Levy Bar approximately one and a half miles away, with Anderson and Thornsbery as his passengers. (Filing No. 43-16 at 9-12.)

After spending some time at the Levy Bar and consuming a few more alcoholic drinks, Myers drove the Golf Cart with Anderson and Thornsbery as passengers, to Third Base Tavern, which was roughly three or four blocks from the Levy Bar. (Filing No. 43-16 at 12-13.) Myers admitted that he felt intoxicated while at Third Base Tavern. (Filing No. 43-16 at 13.) Although Myers stated that he only had vague memories of being at the tavern, he recalled that Thornsbery left Third Base Tavern before he and Anderson because Thornsbery had broken his glasses. (Filing No. 43-16 at 14.)

Myers and Anderson left Third Base Tavern near 12:30 a.m. on April 20, 2013. (Filing No. 43-16 at 14-15, 35.) Although he does not remember leaving, Myers drove the Golf Cart from Third Base Tavern with Anderson as his passenger. (Filing No. 43-16 at 14-15, 35-38.) When driving away from Third Base Tavern, Myers crashed the Golf Cart at approximately 12:33 a.m., causing Anderson to be ejected from the Golf Cart and to strike his head on the corner of a nearby building ("the Accident"). (Filing No. 43-16 at 35-38; Filing No. 43-18 at 5.) Tragically, Anderson died later that morning as a result of the Accident. (Filing No. 43-18 at 5; Filing No. 43-25 at 2.)

On April 24, 2013, Myers was charged with multiple criminal counts related to operating a vehicle while intoxicated and causing Anderson's death. (Filing No. 43-5 at 1.) Myers pled guilty to two misdemeanor charges on May 27, 2014, as a result of the Accident. (Filing No. 43-6 at 1.) On March 30, 2015, the Estate filed a lawsuit against Myers, Fox, and other individuals associated with Third Base Tavern in Clark County, Indiana Circuit Court, under Cause No. 10C04-1503-CT-040, for damages sustained from the Accident. (Filing No. 43-7.) In light of the

Estate's lawsuit in Indiana state court, American Family initiated this action, seeking declaratory judgment that the Policy does not cover the Accident and that American Family is not obligated to defend, indemnify, or provide liability coverage for either Myers or Fox in connection with the Estate's lawsuit. (Filing No. 1.)

## II. <u>SUMMARY JUDGMENT STANDARD</u>

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the Court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox Cty. Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

## III. DISCUSSION

American Family asserts that the plain language of the Policy unambiguously excludes coverage of the Accident. (Filing No. 43-1.) Specifically, American Family contends that the Golf Cart was not an "insured car" and that Myers was not an "insured person," under the Policy's definitions. (Filing No. 43-1 at 19-24, 29-31.) American Family further argues that the Accident is specifically excluded by the Policy because it took place while using a vehicle other than Fox's insured car. (Filing No. 43-1 at 24-29.) The Defendants respond by claiming that there are genuine issues of fact in dispute as to whether Myers qualifies as an "insured person" under the Policy's definitions and that the Policy language is ambiguous as to whether the Golf Cart could be considered a "private passenger car" or "utility car" to meet the definition of an "insured car." [2]

(Filing No. 52.)

---

[2] In response to the Defendants' opposition, American Family also moved to strike paragraphs 4, 7, and 9-19 of the Affidavit of Bill Senefeld (Filing No. 54-1) submitted by the Defendants in its Reply in Support of its Motion for Summary Judgment. (Filing No. 57 at 2-7.) American Family argues that these paragraphs contain inadmissible legal opinions and conclusory statements and that the testimony in these paragraphs does not meet the requirements for expert testimony under Federal Rule of Evidence 702. (Filing No. 57 at 2-6.) American Family further asserts that the Court should strike these paragraphs because the Defendants did not submit an expert report from Bill Senefeld by September 21, 2016, as required by the Case Management Plan in this case. (Filing No. 57 at 6-7; *see also*, Filing No. 24.) Because the Court did not consider the testimony within the Affidavit of Bill Senefeld when ruling upon the Motion for Summary Judgment, American Family's Motion to Strike is **DENIED as moot**.

Under Indiana law, the interpretation of an insurance policy presents a question of law for the Court to decide. *See Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc*., 40 F.3d 146, 151 (7th Cir. 1994) (citing *Tate v. Secura Ins*., 587 N.E.2d 665, 668 (Ind. 1992)); *Jim Barna Log Sys. Midwest, Inc. v. Gen. Cas. Ins. Co*., 791 N.E.2d 816, 823 (Ind. Ct. App. 2003) ("The construction of an insurance contract is a question of law for which summary judgment is particularly appropriate."). A finder of fact is only required to determine the facts serving as the basis of an insurance policy when the policy at issue "is ambiguous and its interpretation requires extrinsic evidence." *Tate*, 587 N.E.2d at 668.

"Clear and unambiguous policy language is given its ordinary meaning" to determine the parties' intent at the time the policy was made. *Holiday Hosp. Franchising, Inc. v. AMCO Ins. Co*., 983 N.E.2d 574, 577-78 (Ind. 2013) (citation omitted). When the language of a policy is ambiguous, the Court will generally resolve such ambiguities in favor of the insured "but will not do so if such an interpretation fails to harmonize the provisions of the contract as a whole." *Id*. at 578 (citations omitted). "[A]n ambiguity exists where the provision is susceptible to more than one reasonable interpretation"; a failure to define a policy term or a disagreement about a term's meaning "does not necessarily make that term ambiguous." *Id*. (citations and quotation marks omitted).

The Policy denies coverage for the Accident in this case because Myers is not an "insured person" and because the Golf Cart is not an "insured car," as the terms are unambiguously defined in the Policy. The Policy only provides coverage for "compensatory damages an insured person is legally liable for because of bodily injury and property damage due to the use of a car or utility trailer," and indicates that American Family "will defend any suit or settle any claim for damages payable under this policy as [it] think[s] proper." (Filing No. 43-3 at 4.) Therefore, in order to

obtain coverage under the Policy, the person that caused a particular bodily injury or property damage must be considered an "insured person." The Policy defines an "insured person" as (1) Fox or a relative of Fox; (2) "[a]ny person using [Fox's] insured car"; or (3) "[a]ny other person or organization" that may be subject to legal liability for acts or omissions caused by "[a]ny person covered under [the Policy] while using [Fox's] insured car" or caused by Fox or any of his relatives covered under the Policy "while using any car or utility trailer other than your insured car." (Filing No. 43-3 at 4-5.) Because Myers is not related to Fox, the only way that he could qualify as an insured person under this definition would be by using Fox's "insured car."

Under the Policy's definitions, an "insured car" means: (1) "[a]ny car described in the declarations and any private passenger car or utility car [Fox] replace[s] it with"; (2) another private passenger car or utility car for which Fox acquires ownership if American Family insures all of Fox's other private passenger cars (as well as all utility cars if seeking coverage of a utility car); (3) "[a]ny additional private passenger car or utility car of which you acquire ownership during the policy period"; (4) any utility trailer owned by Fox; and (5) "[a]ny car or utility trailer not owned by [Fox] being temporarily used as a substitute for any other vehicle described in this definition." (Filing No. 43-3 at 4.) In order for any new private passenger car or utility car Fox acquired after the Policy went into effect to qualify as an "insured car," Fox "must tell [American Family] within 30 days of its acquisition" that he wished for the new private passenger car or utility car to be covered under the Policy. (Filing No. 43-3 at 4.)

Although Fox acquired the Golf Cart on April 16, 2013, he did not notify American Family of the purchase within thirty days. (Filing No. 43-15 at 22.) American Family only learned about the Golf Cart after the first notice of loss was submitted on October 11, 2013—178 days after Fox acquired the Golf Cart. (Filing No. 43-26 at 2; Filing No. 43-21 at 1-2.) Because Fox did not

notify American Family that he wanted the Golf Cart to be covered within thirty days of purchasing it, as required by the Policy, the Golf Cart cannot be considered an "insured car," regardless of whether the Golf Cart met the definition of a "private passenger car" or a "utility car." (*See* Filing No. 43-3 at 4.) Additionally, because the Golf Cart does not meet the Policy's definition of an "insured car," Myers cannot be considered an "insured person." (*See* Filing No. 43-3 at 4-5.) Since Myers does not meet the Policy's definition of an "insured person," American Family is not obligated to cover any compensatory damages related to the Accident.

Furthermore, even if Myers did qualify as an "insured person," the Policy specifically excludes coverage for the Accident because the Golf Cart did not meet the definition of an "insured car." The Policy unambiguously excludes "[b]odily injury or property damage arising out of the use of any vehicle, other than [Fox's] insured car, which is owned by or furnished or available for regular use by [Fox] or any resident of [Fox's] household" (Filing No. 43-3 at 5). Because the Golf Cart does not meet the Policy's definition of an "insured car," as discussed above, and because it was purchased by Fox for use on his farm, the Golf Cart is a "vehicle other than [Fox's] insured car" that is available for Fox's regular use and would be subject to this exclusion.

## IV.  CONCLUSION

For the reasons stated above, the Motion for Summary Judgment (Filing No. 43) is **GRANTED**. Furthermore, American Family's Motion to Strike the Affidavit of Bill Senefeld is **DENIED as moot**. Judgment will be entered accordingly.


    **SO ORDERED**.

Date: 5/10/2017

_____

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Robert Scott O'Dell
O'DELL & ASSOCIATES, P.C.
rodell@odell-lawfirm.com

David E. Mosley
MOSLEY, BERTRAND, JACOBS and MCCALL
dmosley@aye.net

Marcus S. Sedwick
SEDWICKLAW, P.C.
msedwick@sedwicklaw.com